IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **MARVIN WHEAT, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-00222-CV-W-GAF** |
| | ) | |
| **UNION PACIFIC RAILROAD** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Now before the Court is Defendant Union Pacific Railroad Company's ("Defendant" or "UP") Motion for Summary Judgment and request for oral argument. (Doc. # 42). Plaintiff opposes. (Doc. # 47). For the reasons set forth below, Defendant's Motion is GRANTED.

## DISCUSSION

### I.  FACTS

### A.  Background

Plaintiff was employed by UP as a conductor working out of its Kansas City service unit. (Complaint, ¶ 7). As a conductor, Plaintiff was a member of the Sheet Metal Air Railroad Transportation Union ("SMART"), and the terms and conditions of his employment were governed by a collective bargaining agreement ("CBA") between SMART and UP. (M. Wheat Depo., 154:1-4; Doc. # 43, p.1; Doc. # 47, p. 1).

On June 12, 2014, Dr. Steven Ellis performed a partial parotidectomy on Plaintiff's wife, Tiffany Wheat, which involved the partial removal of the left parotid gland, which is one of the salivary glands. (Ellis Depo., 24:7-26:10). The surgery was performed on an outpatient basis, lasting roughly an hour. (*Id.* at 26:24-27:5). The patient was discharged approximately an hour

and a half after the surgery was complete. (*Id.*). Dr. Ellis communicated to Tiffany that the tumor was benign. (*Id.* at 31:5-14). Dr. Ellis did not schedule any follow-up appointments, treatments, or surgeries for Tiffany after July 8, 2014. (*Id.* at 30:5-12, 32:20-33:13, 33:24-34:17).

**B.      Request for Intermittent Leave**

On or about August 20, 2014, Plaintiff requested intermittent FMLA leave for the time period of April 8, 2014 through April 8, 2015 due to a serious health condition of his wife. (Complaint, ¶ 8; Certification). In connection with his FMLA leave request, Plaintiff faxed to UP a form entitled "Certification of Health Care Provider" (the "Certification"). (Certification). Plaintiff completed and signed the portion of the Certification on August 14, 2014, when the section entitled "To Be Completed by the Health Care Provider" was still blank. (*Id.*; Wheat Depo., 81:1-8). Above his signature was the following language:

> By signing this form I agree to allow a Health Care Provider representing Union Pacific to contact my Health Care Provider, if necessary, for purposes of clarification and authenticity of the medical certification. Both I and/or my family member certify that this request is truthful and accurate to the best of our knowledge.

(Certification).

The Certification contained a section entitled "To Be Completed by the Health Care Provider," which contained a series of questions and answers relating to Plaintiff's purported need for intermittent FMLA leave to care for his wife because of her supposed serious health condition. (*Id.*). Among the answers contained in the Certification were the following: (1) that Tiffany had a serious health condition for which she was admitted to the hospital on April 12, 2014 and required multiple treatments; (2) that Tiffany was incapacitated on a periodic basis, generally three to six times per month for one to two days at a time; (3) that the current treatment

2

plan began April 8, 2014 and would continue until April 8, 2015 with the estimated number of treatments unknown, the approximate interval of treatments "PRN," and the recovery period due to treatment unknown; (4) that Tiffany was unable to care for her own basic medical and personal needs and her husband was "needed to provide care due to illness"; (5) that Tiffany required assistance after procedures; (6) that Tiffany needed transportation to her health care provider when ill; and (7) that Tiffany needed comfort during her hospital stay. (*Id.*). At the end of the "To Be Completed by the Health Care Provider" section, Dr. Steven Ellis's printed name and stamped signature was affixed. (*Id.*). The address for Dr. Ellis's practice was listed as 12200 W. 106th St. # 310, Head and Neck Surgery of KC, Overland Park, KS 66215. (*Id.*). Plaintiff admitted his wife completed this section, but claims he never reviewed the contents of the form before faxing it to UP. (*Id.* at 85:10-17).

## C.   Grant of FMLA Leave

Plaintiff admits that after applying for FMLA leave for his wife, UP approved his requested leave on August 21, 2014. (M. Wheat Depo., 77:4-12). After August 21, 2014, Plaintiff was permitted to lay off from work in FMLA status on August 28, September 10, and September 27, 2014. (*Id.* at 100:8-103:17, 110:24-111:21; Employee Work History). Plaintiff confirmed that during his employment with UP, he applied for and/or received FMLA leave on numerous occasions and did not suffer any adverse employment actions. (M. Wheat Depo., 48:3-49:4, 52:8-11, 53:14-19, 60:15-19, 69:22-70:7). Plaintiff admits that, when he requested FMLA leave on several occasions between January 1, 2014 and June 13, 2014, he lacked the necessary accrued hours to qualify for leave; he does not claim that UP improperly denied requests when he was eligible for leave. (*Id.* at 69:13-70:7).

3

**D.    Notice of Investigation**

After receiving the Certification, UP's FMLA manager, Scott McMillan, contacted Dr. Ellis's office to verify the genuineness of the Certification.  (McMillan Decl., ¶ 3).[1]  Dr. Ellis's office told McMillan that it had no record of any FMLA certification issued by their office for Plaintiff and asked McMillan to send them a copy of the Certification.  (*Id.* at ¶ 4).  McMillan then sent Dr. Ellis's office a copy of the Certification.  (*Id.* at ¶ 5; Scanlon Depo., 12:5-11; Fax from UP to Dr. Ellis's office; Snedden Decl., ¶ 7).  After sending the Certification to Dr. Ellis's office, McMillan received an email from Dr. Ellis's nurse, Stephanie Miller, disputing the genuineness of the Certification.  (McMillan Decl., ¶ 6; Email from Miller to McMillan; Scanlon Depo., 23:3-17).[2]  In her email to McMillan, Miller wrote:

> I am inquiring about the FMLA papers for the employee Marvin E. Wheat, regarding his wife Tiffany Wheat.  The FMLA paper work was not filled out by our office.  We were unaware of these paper documents until you contacted Tammy in our office who handles FMLA about questions.
>
> Tiffany was release[d] from our care on 7/8/2014.  The address list[ed] on the FMLA paperwork is not our current address, we have not resided at that location for 2 years, which would not have been put on the forms by our staff member who fills out the forms.  We believe she received a work/school excuse and took the

---

[1] Plaintiff objects to Defendant's use of declarations in support of its statements of facts as hearsay.  Declarations and affidavits are expressly permitted as competent evidence to support a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff's objection is overruled.

[2] Plaintiff objects to this email, along with several other documents, as lacking foundation and/or authenticity.  These objections are overruled.  The standard for determining whether evidence can be considered at this stage is not whether the evidence at summary judgment would be admissible; the standard is whether the evidence could be presented at trial in an admissible form.  *Gannon Int'l, Ltd. V. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012).  The documents in question could be presented with proper foundation being laid.

Plaintiff's authenticity objection is likewise without merit.  The burden of proof for authenticity is slight and all that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.  *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985).  Defendant has met this burden.

4

Dr. stamped name off of that form and applied it to the FMLA papers, with our
old address, which the patient was seen 8 times at our new location.

(Email from Miller to McMillan). After receiving this email from Miller, UP issued a "Notice of

Investigation" to Plaintiff, alleging that he fraudulently misrepresented information contained in

his application for FMLA leave and ordered Plaintiff to attend a formal investigation in Kansas

City, Missouri. (Duncan Depo., 43:6-12; Duncan Decl., ¶ 4; Notice of Investigation). The

Notice of Investigation set forth the charge against Plaintiff as follows:

> While employed as a Trainman working out of the Kansas City Service Unit, you
> were allegedly dishonest in the application for and use of leave under the Family
> Medical Leave Act (FMLA), including alleged fraudulent representation of
> information contained within your submittal of the Certification of Health Care
> Provider Form 16674, regarding your request for a FMLA governed leave dated
> and signed by you on August 14, 2014. Information regarding your alleged
> fraudulent attempt to secure FMLA was made aware to Paula R. Duncan, MTA,
> on September 30, 2014. The proposed discipline for this offense would constitute
> a Level 5 (Permanent Dismissal), under the Union Pacific Discipline Policy.

(Notice of Investigation). The Notice of Investigation further stated that the investigation would

be conducted in accordance with the applicable provisions of the CBA between UP and SMART.

(*Id.*). The Notice of Investigation further informed Plaintiff that he was entitled to representation

and could produce witnesses as provided for in the CBA, and that he could contact Duncan, UP's

charging officer, before the investigation to examine materials and exhibits that might be

presented as evidence. (*Id.*).

Defendant requested that Dr. Ellis attend the disciplinary hearing. (Notice to Appear as

Witness). Dr. Ellis was unable to attend. (Ltr. from Ellis to UP). However, prior to the hearing,

Duncan did speak with Dr. Ellis's assistant, Sherry Scanlon, about the circumstances of the

Certification. (Scanlon Depo., 26:23-27:10; Duncan Decl., ¶ 17). In one call, Dr. Ellis joined

the conversation, allowing Duncan to speak directly to him. (Scanlon Depo., 41:15-20; Duncan

Decl., ¶ 18; Ellis Depo., 61:5-25). Duncan took detailed notes of her conversations and provided

5

them to Scanlon to review. (Scanlon Depo., 28:17-23; Duncan Decl., ¶ 17). Scanlon then contacted Duncan via email to inform Duncan with which statements in the notes Scanlon agreed or disagreed and what corrections she believed were appropriate. (Scanlon Depo., 28:17-32:4). Scanlon's deposition testimony is consistent with Duncan's testimony at the investigative hearing. (*Compare* Investigative Tr., pp. 40-41, 114-15 *with* Scanlon Depo.). At his deposition, Dr. Ellis confirmed that Duncan's notes of his conversation with her accurately summarized their discussion. (Ellis Depo., 68:3-9).

**E.      Investigation Hearing**

The noticed investigation proceeded on October 13, 2014. (Investigation Tr., p. 1). Plaintiff was represented by his labor union's local chairman, J. A. Moore. (*Id.* at p. 2). The investigation included testimony by Duncan, Plaintiff, and Plaintiff's wife, Tiffany. (*Id.* at pp. 2-3). Among the documents admitted was a copy of Rule 1.6 of UP's General Code of Operating Rules, which prohibits employees from being dishonest. (Duncan Decl., ¶ 10; Investigation Tr., p. 105; Corcoran Decl., ¶ 4). At the hearing, evidence was produced showing Tiffany had been under the care of Dr. Ellis until July 8, 2014, when he released her from his care. (Investigation Tr., p. 111, 115). UP also presented evidence that Dr. Ellis had not filled out the Certification seeking FMLA leave prospectively. (*Id.* at pp. 40-41, 43, 115).

Duncan read into evidence her notes of her conversation with Scanlon. (*Id.* at pp. 39-41, 114-15). Duncan related the following facts learned from Scanlon: (1) the handwriting on the Certification was not from anyone at Dr. Ellis's office, however, the Certification was stamped and dated by someone at the front desk; (2) Tiffany was a patient of Dr. Ellis for roughly three months, with the last visit on July 8, 2014; (3) Dr. Ellis released Tiffany from his care on July 8, 2014, with no further visits; (4) no ongoing care by Dr. Ellis was needed; (5) Dr. Ellis would

6

never have granted or authorized time off because Tiffany required no further care after July 8, 2014; (6) Dr. Ellis would never have granted authorized time off into April 2015 because he had released Tiffany on July 8, 2014, approximately five weeks before Plaintiff submitted the Certification; (7) the Certification contained an address for Dr. Ellis where he had not worked for more than two years, and all of Tiffany's treatment had been at the new location. (*Id.* at pp. 40-41, 114-15).

Also admitted into evidence at the hearing were the notes of Duncan's conversation with Dr. Ellis. (*Id.* at pp. 43, 116-117). Duncan related the following facts from Dr. Ellis: (1) Dr. Ellis confirmed that he did not complete the Certification attributed to him; (2) Tiffany required no care that would have required Plaintiff not to work and to say home to care for her; (3) Plaintiff and his wife had shown up at his office on October 3, 2014, caused a ruckus in the waiting area, and had berated his office staff and used foul language with Scanlon; (4) Dr. Ellis had to step away from a patient and take Plaintiff and his wife to a separate room as they were disturbing other patients; (5) Plaintiff and his wife asked Dr. Ellis to write a letter stating that he had completed the doctor's portion of the Certification or, alternatively, complete a new form; (6) Dr. Ellis told Plaintiff and his wife that he would not write such a letter or fill out a new form because he had not completed the original Certification; (7) when Plaintiff and his wife became belligerent with Dr. Ellis, Dr. Ellis advised them that if they had any issues with his treatment, to contact an attorney; and (8) Dr. Ellis politely asked them to exit his office quietly and without further incident or he would call the police. (*Id.* at pp. 43, 116-17).

Tiffany admitted during her testimony at the investigation hearing that she had completed the health care provider section of the Certification. (*Id.* at p. 53). She further testified that, in

7

the past, she had filled out the health care provider section of FMLA paperwork, taken it to a doctor, and had him or her sign and date the form and send it to UP. (*Id.* at p. 55).

## F.    Discipline Imposed and Appeals

Following the investigation, Denis Corcoran, General Superintendent of the Kansas City Service Unit, reviewed the hearing transcript and exhibits. (Corcoran Decl., ¶¶ 4-6). Corcoran concluded that the charges against Plaintiff had been sustained, noting that the section of the Certification that should have been filled out by Tiffany's doctor was instead completed by Tiffany herself, and, based on information from Dr. Ellis's office, Tiffany had no condition after July 8, 2014 that required Plaintiff to take off work to care for her. (*Id.* at ¶ 6). Corcoran did not believe Plaintiff's claim that he had no knowledge that the Certification had been falsified. (*Id.*).

On October 23, 2014, Corcoran issued a letter to Plaintiff entitled "Notification of Discipline Assessed." (*Id.* at ¶¶ 6-7; Notification of Discipline Assessed). In the letter, Corcoran stated he had considered the evidence presented at the investigation hearing and sustained the charges against Plaintiff. (Notification of Discipline Assessed). Also by way of this letter, Corcoran informed Plaintiff that, pursuant to UP's discipline policy, the violation required assessment of Level 5, which is permanent dismissal. (*Id.*).

On November 18, 2014, SMART, on Plaintiff's behalf, appealed Corcoran's imposition of discipline. (11/18/2014 Letter).[3]  In the appeal, Plaintiff contended that UP had no just cause to issue him a Level 5 discipline. (*Id.* at p. 3).  Plaintiff specifically contended that the facts

---

[3] Plaintiff objects to Defendant's description of this appeal as being brought by Plaintiff. Plaintiff states that it was brought by his labor union pursuant to a collective bargaining agreement.  Just as a lawyers bring claims on behalf of their clients, so too do unions on behalf of their members.  This act does not convert Plaintiff's appeal into SMART's, just as a lawyer signing a complaint does not convert the claims made therein into the lawyer's.  Objection overruled.

presented at the hearing did not support the charges against him. (*Id.* at p. 6). UP denied Plaintiff's appeal on January 9, 2015. (1/9/2015 Letter).

Plaintiff sought further review from the Public Law Board 7757 (the "PLB"), which upheld Plaintiff's dismissal in its Award No. 17. (PLB Award No. 17).[4] Plaintiff did not appeal the PLB's Award. (M. Wheat Depo., 149:5-15).

## G.    Testimony from Dr. Ellis and his Staff

Having reviewed the Certification, Dr. Ellis stated that he did not sign and would not have signed it. (Ellis Depo., 68:20-69:1). According to Dr. Ellis, Tiffany did not have a serious health condition that would prevent her from being able to perform her regular daily activity needs, except during the surgical procedure and the immediate follow-up. (*Id.* at 47:4-8). Dr. Ellis disagreed that Tiffany had a serious health condition for the dates listed on the Certification, particularly on a prospective basis. (*Id.* at 47:9-15). Dr. Ellis last saw Tiffany on July 8, 2014, and following that appointment, there was no schedule follow-up treatment or prescribed treatment regimen. (*Id.* at 30:5-12, 32:20-33:13). After reviewing the Certification, Dr. Ellis stated he did not agree that Plaintiff needed leave from April 8, 2014 through April 8, 2015. (*Id.* at 43:23-44:16).

As of August 15, 2014, Dr. Ellis had not seen Tiffany in more than a month with no planned follow-up. (*Id.*). Dr. Ellis testified that beyond August 15, 2014, Tiffany would not have periods of incapacity that would last two days. (*Id.* at 49:3-6). The normal post-operative recovery time to take narcotic pain medications from a parotidectomy is one to two weeks; this is the only time period during which Tiffany would be incapacitated. (*Id.*). When Dr. Ellis last

---

[4] Plaintiff objects to the consideration of the Award on several grounds. Defendant asks the Court to give preclusive effect to the findings of the PLB's Award. The Court need not resolve the issues raised by the parties concerning the Award because other non-related reasons, as outlined in this Order, result in summary judgment for the Defendant.

saw Tiffany on July 8, 2014, a little less than a month after her surgery, she should not have been relying upon narcotics at that point. (*Id.* at 49:7-21). Dr. Ellis would not have prescribed those for her unless she had a reason for that prescription for pain related to something. (*Id.*). As of August 15, 2014, and looking forward from that date, Tiffany would not experience three to six days per month of incapacity. (*Id.* at 48:19-23). Dr. Ellis testified that, as of the date of the Certification, he did not anticipate any further need for Plaintiff to care for his wife; Dr. Ellis was unaware of any ongoing medical issues with Tiffany. (*Id.* at 54:8-20). Dr. Ellis did not anticipate any future hospitalizations. (*Id.* at 57:14-20). Tiffany's only hospital stay would have been her treatment in the surgery center, which occurred on June 12, 2014, for only part of the day of her surgery. (*Id.*).

Dr. Ellis testified that he did not agree with box 4 on the Certification, which said that Plaintiff needed to take intermittent leave through April 8, 2015 to care for his wife. (*Id.* at 43:17-44:4). Dr. Ellis stated that, as of August 2014, Tiffany would not have bouts of incapacity requiring Plaintiff to take intermittent leave three to six times per month for the condition he had treated, and he never told her that she would require treatment through April 2015. (*Id.* at 75:15-24). Dr. Ellis did not expect that Tiffany would be coming to see him periodically through April 2015. (*Id.* at 42:15-18). As of August 15, 2014, there was no follow-up treatment that he anticipated, and none were scheduled. (*Id.* at 43:9-16). Nor did Tiffany have a prescribed treatment through April 2015, contrary to the Certification. (*Id.* at 52:17-20). As of August 15, 2014, Dr. Ellis did not anticipate any further need for Plaintiff to care for his wife, and he would not have said that she needed assistance going forward, nor would he have prescribed such assistance. (*Id.* at 54:8-23). As of August 15, 2014, the only "hospital stay" Tiffany needed was her stint in the surgical center, which had already occurred; there was no anticipated

hospitalization. (*Id.* at 57:14-20). Virtually all of the things that appeared in the physician's section of the Certification would have been past tense as of August 15, 2014. (*Id.* at 57:21-25).

Tammie Snedden is a receptionist at Head and Neck Surgery of Kansas City. (Snedden Decl., ¶ 1). One of her responsibilities is to review and, with the advice and permission of the appropriate physician, complete FMLA paperwork for patients who require it. (*Id.* at ¶ 2). Upon receiving a patient's request for FMLA certification, Snedden's practice is to complete the physician's portion with any needed input from the physician and then stamp and date it with the physician's signature. (*Id.* at ¶ 8). Snedden does not request that a patient complete the FMLA physician's certification form and then have her sign it, nor is this her practice. (*Id.* at ¶ 9). Snedden's practice does not include merely stamping paperwork that has already been completed by the patient, nor does she recall ever doing so. (*Id.* at ¶ 10).

Snedden noticed several things that made her question the genuineness of the Certification upon reviewing it, namely incorrect dates of treatment, an incorrect address for the medical office, and the authorization of intermittent FMLA leave for one year. (*Id.* at ¶¶ 11-14). Snedden has confirmed that the signature stamp on the Certification is that of Dr. Ellis and the date next to the signature is in her handwriting; however, she has no idea how that information would have been applied to the Certification. (*Id.* at ¶ 15). Snedden has stated that she would never stamp Dr. Ellis's signature on paperwork that had been completely filled out by a patient. (*Id.*). Snedden would not have signed the Certification had it contained the information it does now. (*Id.*).

## H.    Original Certification

Before the deposition, UP had served a document request on Plaintiff, asking him to produce all FMLA leave applications and all certification of health care provider forms Plaintiff

submitted to UP in connection with his request for FMLA leave. (Pl. Resp. to Def. 1st Req. for Prod. of Docs., Nos. 23-24). While objecting to the requests on grounds that they were not reasonably calculated to lead to the discovery of admissible evidence, Plaintiff responded to the requests by directing UP to the transcript of the disciplinary investigation and exhibits thereto. (*Id.*). After the depositions of Dr. Ellis and Scanlon, but before the scheduled deposition of Plaintiff and his wife, Defendant asked Plaintiff to bring to his deposition the original FMLA paperwork, including the Certification, that he faxed to UP on August 14, 2014. (Email from Leff to Garella dated 2/21/2017).[5] At her deposition, Tiffany produced the original page 1 of the Certification, but did not produce page 2. (T. Wheat Depo., 82:1-16). She did say, however, that she had the original at home and could provide it to her husband's attorney. (*Id.*). To date, Plaintiff has not supplied UP with an opportunity to inspect original page 2, purportedly because Plaintiff has not been able to locate the original document. (Correspondence between UP's and Plaintiff's counsel).[6]

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Thomas v. Heartland Emp't Serv. LLC*, 797 F.3d 527, 529 (8th Cir.

---

[5] Plaintiff disputes the validity of the request as untimely and that it was not included in the notice to depose either Plaintiff or Tiffany. Discovery closed on March 15, 2017, and the request was made on February 21, 2017. Thus, the request was timely, and the document should have been produced in its entirety.

[6] Plaintiff did not set forth his own statement of uncontroverted facts as required by Local Rule 56.1 but rather interspersed them in his analysis section. Defendant was therefore unable to specifically designate which facts were undisputed or disputed, and the reasons thereof. Consequently, to the extent Plaintiff's arguments cite to facts outside those established as uncontroverted through Local Rule 56.1, the Court does not consider them.

12

2015).  "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact."  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case necessarily renders all other facts immaterial.'"  *B.M. ex rel. Miller v. S. Callaway R—II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (ellipses omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Summary judgment should not be granted if a reasonable jury could find for the nonmoving party.  *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948-49 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

 "The FMLA entitles eligible employees of covered employers to twelve working weeks of unpaid leave during any twelve-month period under certain enumerated circumstances, including when the employee suffers from 'a serious health condition that makes the employee unable to perform the functions' of her position."  *Walker v. Trinity Marine Prod., Inc.*, 721 F.3d 542, 544 (8th Cir. 2013) (quoting 29 U.S.C. § 2612(a)(1)(D)).  An eligible employee may also take this time off to care for an immediate family member who suffers from a "serious health condition."  *Caldwell v. Holland of Tex., Inc.*, 208 F.3d 671, 673-74 (8th Cir. 2000).

"Two types of claims exist under the FMLA: (1) 'interference' or '(a) (1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights."  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)-(2)).  However, an employee has no rights to FMLA leave when she does not suffer from a serious health condition.

*See Walker*, 721 F.3d at 545-46.  A natural extension of this proposition is that an employer cannot interfere with an employee's rights under the FMLA where the employee is seeking leave to care for a family member that does not suffer from a serious health condition.  *See, e.g., Schmittou v. Wal-Mart Stores, Inc.*, No. Civ.011763(JRT/RLE), 2003 WL 22075763, at *6 (D. Minn. Aug. 22, 2003).

A person has a "serious health condition" for purposes of the FMLA if he has an "illness, injury, impairment, or physical or mental condition" that requires "in-patient care" or "continuing treatment" by a health care provider.  29 C.F.R. § 825.113(a); *Caldwell*, 208 F.3d at 674.  In-patient care requires an overnight stay.  29 C.F.R. § 114.  It is undisputed that Tiffany's health condition has not required an overnight stay.

For Tiffany's health condition to be considered serious due to continuing treatment, it must meet the following requirements: (1) she must have suffered a period of incapacity of more than three consecutive, full calendar days; and (2) involving treatment two or more times within 30 days of the first day of incapacity or treatment on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.  29 C.F.R. § 825.115.  In summarizing the directives of 29 C.F.R. § 825.115, the Eighth Circuit has articulated three objective requirements that must be met to determine if an individual has a "serious medical condition."  *Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001); *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000).  First, the person must have a period of incapacity that requires absence from work.  *Thorson*, 205 F.3d at 377.  Second, the period of incapacity must exceed three consecutive calendar days.  *Id.*  Lastly, the person must have continuing treatment by a health care provider.  *Id.*

14

It appears the parties do not dispute that Tiffany suffered from a serious health condition until July 8, 2014, the day Dr. Ellis released Tiffany from his care. However, the parties also do not dispute that Plaintiff did not have the necessary accrued hours to take leave during this time period when it is established that Tiffany suffered from a serious health condition. Accordingly, any leave taken or denied during this time period is not of relevance to this case.

On the other hand, the parties do dispute whether Tiffany had a serious health condition which would form the basis for intermittent FMLA leave from August 14, 2014 until April 2015 by Plaintiff. While Tiffany's health condition may be considered serious through July 8, 2014, the record establishes that she was no longer suffering from a serious health condition as of August 14, 2014, the date of Plaintiff signed the application. Tiffany last saw Dr. Ellis on July 8, 2014, and Dr. Ellis presented uncontroverted testimony that he released Tiffany from his care on that date. Thus, there was no regimen of continuing treatment by a health care provider as of August 14, 2014. Nor is there any evidence suggesting Tiffany suffered a bout of three consecutive days of incapacity for which she sought treatment following Dr. Ellis's release of Tiffany from his care. No restrictions or limitations were placed on Tiffany at her last visit with Dr. Ellis and he did not anticipate any needed follow-up treatment. The only evidence suggesting Tiffany might have a serious health condition requiring ongoing treatment is the Certification, which Tiffany admits she filled out and Dr. Ellis and his staff have no recollection of how his signature stamp could have been affixed to the document.

Considering all of this evidence, no reasonable jury could find that Tiffany had a serious health condition on August 14, 2015 that would require Plaintiff to take three to six days off per month through April 2015. *See* 29 U.S.C. § 2612(b)(1) (intermittent leave to care for a family

member may only be taken when medically necessary).  This, in and of itself, warrants summary judgment in favor of Defendant.  However, additional reasons for summary judgment exist.

## A.    FMLA Interference

An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercised of any right contained in the FMLA.  *Stallings*, 447 F.3d at 1050 (citing 29 U.S.C. § 2615(a)).  "Interference includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA.'"  *Id.* (quoting 29 C.F.R. § 825.220(b)).  In an interference claim, an employee need only show that he was entitled to a denied benefit.  *Id.*  "[A]n employee can prove interference with an FMLA right regardless of the employer's intent . . . and can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave."  *Id.*  "[W]here an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery."  *Id.* at 1051.

"Confusion often arises as to whether an employee's FMLA claim 'is really about interference with his substantive rights, not discrimination or retaliation.'"  *Id.* (quoting *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)).  An "interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent."  *Id.*  The lines between the two claims are not hard and fast.  *Id.*  Where an employee has received all of the FMLA leave he requested, the employer has never impeded the employee's use of FMLA leave, and only after use of such leave was the employee questioned about whether FMLA leave was fraudulently

used and fired, the claim is fundamentally a claim for retaliation and should be analyzed accordingly. *See id.*

Here, Plaintiff was granted intermittent leave pursuant to his August 14, 2014 application. Plaintiff was allowed on several occasions to take leave from work under the FMLA. The only interference Plaintiff complains of is the employer's decision to pull him from service pending investigation and then to terminate his employment. These facts mimic those of *Stallings*. Thus, Plaintiff's claim is fundamentally a claim for retaliation.

However, even if Plaintiff's claim could be viewed as one for interference, it still fails. To establish an interference claim, an employee must prove: "(1) she was an 'eligible employee' under 29 U.S.C. § 2611(2); (2) the employer was an 'employer' under 29 U.S.C. § 2611(4); (3) she was entitled to FMLA leave, 29 U.S.C. § 2612(a)(1); (4) she gave the employer notice of her intent to take FMLA leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied her FMLA benefits to which she was entitled." *Ponder v. Verizon N. Inc.*, No. 4:09-CV-1763 CAS, 2010 WL 4868080, at *4 (E.D. Mo. Nov. 23, 2010) (citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007)). An employee can prove interference with FMLA rights regardless of the employer's intent. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005).

Nonetheless, "[a]n employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions." 29 C.F.R. § 825.216(d). "[T]he regulations make clear that, if an employer chooses to interfere with an employee's FMLA leave rights, the 'employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.'" *Throneberry*, 403 F.3d at 978-79 (quoting 29 C.F.R. § 825.216(a)(1)).

17

"As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights." *Id.* at 979.

Cases from across the country hold that an employer is justified in terminating an employee who has either submitted falsified paperwork or otherwise committed fraud in connection with his FMLA leave. *See, e.g., Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012); *Buel v. Toledo Hosp.*, No. 3:13-CV-00012, 2013 WL 6230957, at *4 (N.D. Ohio Dec. 2, 2013); *Glapion v. CSX Transp., Inc.*, No. 06C5893, 2010 WL 489702, at *7 (N.D. Ill. Feb. 9, 2010); *Yasmeen v. Hospira Inc.*, No. 2:06-CV-00507PGC, 2007 WL 3254923, at * 5 (D. Utah Nov. 2, 2007); *Loomis v. Honda of Am. Mfg. Inc.*, No. C2-01-606, 2003 WL 133264, at *6 (S.D. Ohio Jan. 6, 2003); *Baltuskonis v. US Airways, Inc.*, 60 F. Supp. 2d 445, 449 (E.D. Pa. 1999). "[A]n employee is not entitled to FMLA leave on the basis of the falsified paperwork." *Smith v. Hope Sch.*, 560 F.3d 694, 701-02 (7th Cir. 2009).

Tiffany admitted she filled out the Certification without Dr. Ellis's actual input or consent. She merely took the form to Dr. Ellis's office and somehow got Dr. Ellis's stamped signature affixed to the document. Dr. Ellis has flatly disavowed the contents of the Certification, noting it is inconsistent with Tiffany's history and his medical judgment. Plaintiff has refused to produce page two of the original Certification to Defendant for inspection, despite Defendant's timely discover request for the document. Plaintiff's failure to produce the original Certification in its entirety raises a reasonable inference that the Certification was forged, falsified, or altered after it left Dr. Ellis's office. *See Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1112 (8th Cir. 1988) (negative inference is warranted if the spoliation or destruction of evidence was intentional and indicates a desire to suppress the truth). No reasonable jury

could view these facts and fail to find that Plaintiff submitted a falsified Certification or otherwise committed fraud when seeking FMLA leave on August 14, 2014.

**B.    FMLA Retaliation**

"The FMLA prohibits employers from discriminating against an employee for asserting his rights under the Act." *Stallings*, 447 F.3d at 1051 (citation omitted). "This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action." *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). "Basing an adverse employment action on an employee's use of leave . . . is therefore actionable." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002).

Claims of retaliation for the use of FMLA leave are examined under the *McDonnell Douglas* burden-shifting framework. *See Stallings*, 447 F.3d at 1051-52 (citation omitted). First, the employee must establish his prima facie case; the employee must show "1) he engaged in protected conduct; 2) he suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012). If the prima facie case is met, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged actions. *Id.* If the employer fulfills its burden, then the employee is "left with 'the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision.'" *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) (quoting *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

Plaintiff cannot establish the prima facie case for FMLA retaliation because he was not engaged in protected conduct, and even if he was so engaged, he cannot show that the adverse action was casually linked to the protected conduct. As discussed above, his wife did not suffer

from a "serious health condition" during the relevant time period, *i.e.* on or after August 14, 2014. As such, the FMLA does not protect any leave Plaintiff took to purportedly care for his wife. *See Walker*, 721 F.3d at 545; *Schmittou*, 2003 WL 22075763, at *7. Additionally, a fraudulent request for FMLA leave cannot be deemed a protected activity such to support a retaliation claim. *See Smith*, 560 F.3d at 702; *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997); *Rhym v. Se. Pa. Transp. Auth.*, No. 05-3750, 2006 WL 2038602, at *4 (E.D. Pa. July 20, 2006); *Loomis*, 2003 WL 133264, at *5. As discussed previously, Plaintiff request for FMLA is fraudulent, and thus, not protected.

However, even if the Court deemed Plaintiff's conduct as protected, he still could not establish the prima facie case. "'Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.'" *Smith*, 302 F.3d at 832 (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)). When determining if there is temporal proximity between the FMLA leave and the date of termination, the Eighth Circuit has directed district courts to look to the date the employer knew of the employee's use or planned use of FMLA leave. *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012). Plaintiff's request for FMLA leave occurred on August 14, 2014. Defendant suspended him from service on October 1, 2014 pending investigation into his dishonesty, meaning nearly six weeks had passed between the date Defendant knew of Plaintiff's planned use of FMLA leave. The Eighth Circuit has recognized that the passage of one month of time is too long to support a finding of causation. *See, e.g., Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1088 (8th Cir. 2010), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 676 (8th Cir. 2010), *abrogated on other grounds by Torgerson*, 643

F.3d 1031; *Disbrow v. Oticon, Inc.*, No. 4:15 CV 308 CDP, 2016 WL 427946, at *4 (E.D. Mo. Feb. 4, 2016). Consequently, the link between Defendant's knowledge of Plaintiff's planned leave and the adverse action is too tenuous to find them casually linked.

Even if Plaintiff could establish his prima facie case, summary judgment in favor of Defendant is still appropriate because Defendant had a valid, non-retaliatory reason for suspending and then terminating Plaintiff's employment and Plaintiff cannot establish that this reason was merely pretext. In Defendant's letters concerning the investigation of Plaintiff's FMLA request and termination, Defendant made clear that the reason for the investigation and Plaintiff's termination was Plaintiff's dishonesty when requesting leave, not the fact that Plaintiff had requested leave. The submission of false or fraudulent documents or information provides a valid, non-retaliatory reason for terminating employment. *See, e.g., Scruggs*, 688 F.3d at 826; *Buel*, 2013 WL 6230957, at *4; *Glapion*, 2010 WL 489702, at *7; *Yasmeen*, 2007 WL 3254923, at *5; *Loomis*, 2003 WL 133264, at *6; *Baltuskonis*, 60 F. Supp. 2d at 449. "[L]osing a job is a foreseeable consequence of dishonesty." *Smith*, 560 F.3d at 701.

Additionally, courts have rejected retaliation claims where the employer honestly believed the employee had misused or engaged in fraud when seeking FMLA leave. *See, e.g., Price v. GKN Aerospace N. Am., Inc.*, No. 4:05CV01147ERW, 2006 WL 3004035, at * 4 (E.D. Mo. Oct. 20, 2006), *aff'd*, 256 F. App'x 853 (8th Cir. 2007); *Scruggs*, 688 F.3d at 826; *Hamm v. Nestle USA, Inc.*, No. 12-CV-2427, 2013 WL 4401328, at *2 n.1 (N.D. Ill. Aug. 15, 2013). Here, Defendant held an honest belief that Plaintiff was dishonest in his submission of falsified paperwork and made its decision to terminate Plaintiff based on its honest belief.

Plaintiff has not shown that Defendant's legitimate reason for terminating is merely pretext. He has not shown that Defendant's proffered explanation is unworthy of credence or

that it is more likely that a prohibited reason more likely motivated Defendant. *Wallace*, 442 F.3d at 1120.

## <u>CONCLUSION</u>

Plaintiff's wife did not suffer from a "serious health condition" for which Plaintiff was eligible for FMLA leave. Further, Plaintiff's filing of falsified paperwork does not constitute a protected activity under the FMLA. Defendant had a legitimate, non-retaliatory reason for terminating Plaintiff's employment. For these reasons and the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 19, 2017